ORIGINAL

STEVEN N. KURTZ, ESQ. [SBN 125972]
DAVID S. MAOZ, ESQ. [SBN 233857]
**LEVINSON ARSHONSKY & KURTZ, LLP**
16027 Ventura Blvd., Suite 600
Encino, CA 91436
Telephone: (818) 382-3434
Facsimile: (818) 382-3433


FILED
OCT 27 2006
CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

Attorneys for Creditor, ROBERT S. HOWARD

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In Re:<br><br>OKUN ENTERPRISES, INC, a California Corporation, dba BEVERLY HILLS FORD,<br><br>Debtor. | CASE NO: 2:06-bk-14521 BB<br><br>Chapter 11<br><br>**DECLARATION OF ALFRED STRUM IN SUPPORT OF ROBERT S. HOWARD'S MOTION FOR RELIEF FROM STAY**<br><br>[Notice of Motion and Motion for Relief from Stay; Memorandum of Points and Authorities; Declarations of Richard Teitel, Jim Burnap and Steven N. Kurtz filed and served concurrently herewith]<br><br>[11 U.S.C. §§ 362 (d)(1)-(2)]<br><br>Date:  November 28, 2006<br>Time:  10:00 a.m.<br>Place:  Courtroom 1475 |

I, Alfred Strum, declare as follows:

1. I am a certified public accountant duly licensed to practice accounting in the state of California. I am Mr. Howard's accountant and business manager entrusted with the business and financial affairs related to this transaction. I am submitting this declaration in support of Creditor Robert S. Howard's Motion for Relief from Automatic Stay so that Mr. Howard can regain

1342-001/30838                                                         1

possession of his real property commonly known as 9222 and 9231 West Olympic Boulevard, Beverly Hills, California (the "Property"). I have personal knowledge of the matters stated herein, and if called upon to testify thereon, I could and would competently testify to the truth thereof.

2. On or about December 1, 1991, Howard leased the Property to Paulson Beverly Hills Land, Inc., which was memorialized in a lease (the "Lease"). A true and correct copy of the Lease is attached hereto as Exhibit "A," incorporated by this reference as though fully set forth herein.

3. Since 1991, the Lease has been assigned twice, ultimately resulting in Okun's possession of the Property.

4. As one my duties for Mr. Howard, I am in charge of collecting rent from Okun Enterprises, Inc. ("Okun"), the debtor herein. Prior to September 1, 2006, Okun would send each month's rent for the Property to my office addressed to my attention. As of September 1, 2006, Okun did not submit its monthly rent for September, 2006, which pursuant to the Lease is due each month in advance. As a result, I sent a written notice to Okun *via* certified mail informing Okun that the September, 2006, rent was not received, and requesting that Okun tender the back-rent within 10 days. A true and correct copy of my September 1, 2006, correspondence to Okun is attached hereto as Exhibit "B," incorporated herein by this reference as though fully set forth herein.

5. As of September 14, 2006, I still did not receive any of Okun's back-rent that was due. On September 14, 2006, I promptly informed Richard D. Teitel, Mr. Howard's business attorney that Okun had still failed to pay rent for September, 2006. As of the date of the signing of this declaration, I have still not received Okun's rent for either September or October, 2006.

6. It is my further understanding that there is approximately $33,277.30 in back-taxes owed on the Property. The manner in which the back taxes were calculated is set forth in Exhibit "F" attached to the Declaration of Steven N. Kurtz filed and served concurrently herewith.

7. On or about August 13, 2004, a Phase I Environmental Site Assessment (the "Phase I ESA") was conducted on the Property. The conclusions of the Phase I ESA report were provided to me by Okun. A true and correct copy of the conclusions of the Phase I ESA Report is attached hereto as Exhibit "D," incorporated herein by this reference as though fully set forth. The Phase I ESA report states that: (1) "significant staining in the hazardous materials storage area" were observed; (2) "[c]ontaminated soil may still be present in the area of the former tank pit"; and, (3) "a cracked three-

1 stage clarified system is located adjacent to the hand car wash area in the northwestern portion of the
2 site." The Phase I ESA report further recommends that "limited subsurface investigations" be
3 conducted in the aforementioned areas, which would mean that an invasive (and potentially costly)
4 Phase II Environmental Site Assessment would have to be conducted. I am informed and believed
5 that a Phase II ESA has still not been conducted by Okun over two years after the Phase I ESA was
6 issued, as I have not received notice of such an inspection being contemplated or a report indicating
7 that such an inspection was conducted.

8     I declare under penalty of perjury under the laws of the United States of America that the
9 foregoing is true and correct. Executed this ___ day of October, 2006 at Norwalk, California.

10
11                                   _____
                                    ALFRED STRUM

LEVINSON ARSHONSKY & KURTZ, LLP

1052-030/30838

3